Andrew H. CARPISASSI, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 94–3532.

United States Court of Appeals,
Federal Circuit.

Jan. 27, 1995.

Andrew H. Carpisassi, submitted pro se.

Mark A. Melnick, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, submitted for respondent. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director. Of counsel were Lorraine Lewis, Gen. Counsel, James S. Green, Associate Gen. Counsel and Timothy C. Watkins, Atty., Office of Personnel Management.

Before PLAGER, CLEVENGER, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

This case involves the efforts by a federal employee, appealing *pro se*, to obtain the benefits of one of the retirement options provided by Congress, and illustrates the difficulties an employee can have trying to find his way, with no help from the Office of Personnel Management (OPM), through the maze that constitutes the federal retirement system statutes and rules.

Andrew Carpisassi, after many years as a federal employee paying his monthly contribution into the retirement system, retired. Under the law, such an employee is entitled to an annuity which would pay him a monthly retirement income for life. *See generally* 5 U.S.C. §§ 8333, 8334 (1988 & Supp. V 1993). If the employee is married at the date of retirement, as was Mr. Carpisassi, the amount of the employee's monthly payment is reduced by a factor actuarially computed to fund a survivor annuity for the life of the spouse, should the spouse survive the employee. *Id.* §§ 8339(j)(1), 8341(b). The statutes provide that the employee and spouse may together waive the spouse's right to the survivor annuity by executing the appropriate written form, thereby giving them a larger current income but leaving the spouse without any survivor annuity should he or she survive the annuitant. *Id.* § 8339(j)(1).

Congress later engrafted onto this basic annuity scheme an "alternative annuity" election. During the time frame relevant to this case, one of an employee's options upon retirement was to elect to receive (in addition to a monthly income and, if married, the surviving spouse annuity), an up-front cash payment called the "lump-sum credit," which basically comprises the contributions paid into the system by the employee plus interest. *Id.* §§ 8331, 8343a(b).[1] If this "lump sum" option were elected, OPM reduced the employee's monthly retirement payment by an amount actuarially equivalent to the lump-sum payout. *Id.* § 8343a(c); 5 C.F.R. §§ 831.2204, 831.2205 (1994). It appears that the amount of the spouse's survivor annuity initially "elected" (that is, not waived) upon retirement, under § 8339(j)(1), remains fixed;[2] it is only the employee's monthly annuity which is decreased by the payment of the lump-sum credit. 5 C.F.R. §§ 831.2204, 831.2205 (1994).

In Mr. Carpissasi's case, OPM calculated that under the basic annuity program (no lump-sum payout), he would get $783.00 per month for life, and his widow would get $465.00 per month for her remaining life. Under the alternative annuity, Mr. Carpisassi would get a $27,224.17 lump-sum payment and $597.00 per month; his widow would get $469.00 per month should she survive him. The impact of the cash payout was to reduce Mr. Carpisassi's lifetime income, but actually to increase (by a small amount) the surviving spouse's income.[3]

Congress specified that, in the case of a married employee such as Mr. Carpisassi, an alternative annuity could be elected only with the written consent of the spouse: "An employee or Member who, at the time of retiring under this subchapter ... is married, shall be ineligible to make an election under this section unless a waiver is made under section 8339(j)(1) of this title." 5 U.S.C. § 8343a(d)(1) (1988). The § 8339(j)(1) waiver referred to is a joint waiver of the employee and spouse of the spouse's right to a survivor annuity under the basic annuity provisions. *Id.* § 8339(j)(1). As noted above, however, the election of a lump-sum payout option is intended not to reduce that annuity.[4] Thus the requirement for spousal consent in § 8343a is not predicated on the election of an option that would waive or reduce the surviving spouse's annuity. Rather, Congress for whatever reason required spousal consent whenever the alternative annuity with lump-sum payout is elected.

There is a further wrinkle. A special exemption is provided in § 8339(j)(1) relating to spousal consent. That special exemption provides that, in accordance with OPM regulations, a married employee can, without the spouse's consent, waive the survivor annuity if either (1) the spouse's whereabouts cannot be determined, or (2) due to "exceptional circumstances, requiring the employee or Member to seek the spouse's consent would otherwise be inappropriate." *Id.*[5]

With that background—one that a casual familiarity with the statutes may not impart—we can turn to the problem Mr. Carpi-

---

1. Congress has now eliminated the alternative annuity with lump sum payout as an option for federal retirees, except persons who have a "life-threatening affliction or other critical medical condition." *See* Act of Aug. 10, 1993, Pub.L. No. 103–66, tit. 11, § 11002(a), 107 Stat. 409 (1994).

2. *See* note 3, *infra.*

3. It is unclear how OPM arrived at a slightly higher survivor annuity under the lump-sum option, given that the regulations, and the alternative annuity election form sent by OPM to Mr. Carpisassi, indicate that the lump-sum payment is not meant to affect the survivor annuity.

4. *See* note 3, *supra.* Of course, whether a lump-sum payout in fact worsens the spouse's overall

financial position depends on whether the spouse actually shares in the benefit of the lump-sum payment to the same extent he or she would share in the retiree's monthly annuity.

5. We assume, without deciding, that the incorporation of the waiver into § 8343a(d)(1) includes the exemptions contained in § 8339(j)(1). The statute requires that "exceptional circumstances" must be established "to the satisfaction of the Office [of Personnel Management]." 5 U.S.C. § 8339(j)(1) (1988 & Supp. V 1993). OPM regulations, however, require a *judicial* determination of exceptional circumstances to effect a waiver, 5 C.F.R. § 831.618(b) (1994), though it is unclear in what court and by what procedure such an action is pursued. The validity of this regulation is not before us.

sassi faced. In the course of making his retirement election, OPM advised him of his options and the amounts each option would provide. He desired the alternative annuity that provided both a lump-sum payment and a retirement income for himself and his surviving spouse. OPM advised him that he needed written spousal consent for that option, and that under OPM's rules the alternative annuity election, including the spousal consent, must be filed within a specified short period of time. Mr. Carpisassi realized that would not be easy—he was experiencing marital difficulties, which it appears may have ended in divorce. Consequently, his attorney wrote to OPM requesting additional time to obtain the spouse's consent. OPM did not respond to the letter.

Several months later, OPM informed Mr. Carpisassi that, since a spousal consent had not been timely filed, his requested lump-sum option was denied, and OPM processed his annuity as a regular monthly annuity by default. Mr. Carpisassi acknowledged receipt of OPM's notice and again requested an extension of time to obtain his spouse's consent. Over one month later, OPM responded to this letter by confirming that Mr. Carpisassi had failed to file any spousal consent and that OPM therefore had given him a regular annuity. OPM did not address either of Mr. Carpisassi's extension requests.

Mr. Carpisassi sought reconsideration of OPM's decision, and again requested additional time to obtain and file the spousal consent form. Again OPM did not respond to the request for extension, and two years later issued a denial of the reconsideration request. Mr. Carpisassi appealed OPM's denial to the Merit Systems Protection Board (MSPB or Board).[6]

By now, several years had gone by. Mr. Carpisassi did eventually obtain his spouse's signature on the consent form, and filed it with OPM. The Board was unimpressed by Mr. Carpisassi's success. The Board noted that Mr. Carpisassi waited nine *days* after finally obtaining the spouse's signature before filing the consent form with OPM—a fact which seems to us unremarkable alongside OPM's failure over several *years* to respond to Mr. Carpisassi's requests for relief. The Board found that Mr. Carpisassi's circumstances did not come within any of the justifications previously recognized by the Board for waiving a filing deadline; the Board deemed Mr. Carpisassi not diligent or prudent in providing the waiver or contacting OPM when he consistently failed to hear anything on his requests.

Mr. Carpisassi is now, over four years after retiring, still seeking his lump-sum payment. It is unclear from the record whether he is now divorced—the case was submitted on informal (*pro se* ) briefs and that fact was not disclosed. Of course, if he is now divorced, his former spouse (absent a post-divorce election by Mr. Carpisassi or a property settlement provision on point) would be neither sharing the use of his own monthly annuity nor entitled to any survivor annuity, and thus his election of a lump-sum cash payout would seem to be no one's concern but his.[7]

Mr. Carpisassi has appealed for help to this court. OPM could have helped him by responding to his letters requesting additional time to file the spousal consent. They might then have explained why additional time might or might not be available, and that in any case he could, pursuant to statute, request a complete waiver of the requirement for spousal consent.

---

**6.** Following an Initial Decision rendered by the Administrative Judge, Dkt. No. PH–0831–94–0126–I–1, Mr. Carpisassi petitioned the full Board for review. The Board denied the petition for failure to meet the criteria for review at 5 C.F.R. § 1201.115 (1994), and the Initial Decision became the final decision of the Board, 63 MSPR 699. 5 C.F.R. § 1201.113(b) (1994).

**7.** *See* 5 U.S.C. § 8339(j)(5)(A)(ii) (1988) ("Any reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retired employee or Member shall be terminated for each full month ... after the dissolution of the spouse's marriage to the employee or Member, except that an appropriate reduction shall be made thereafter if the spouse is entitled as a former spouse, to a survivor annuity under section 8341(h) of this title"); 5 U.S.C. § 8341(h) (1988) (providing that a former spouse is entitled to a survivor annuity to the extent provided for in a post-divorce election by the employee or a divorce decree).

His attorney could have helped him by determining that a waiver of the consent requirement might have been available, and by establishing a record in pursuit of that remedy. But for someone perhaps unfamiliar with the intricacies of federal retirement legislation and rules, unscrambling that legal egg might cost more in legal fees than the quest was worth. And Congress might have helped, by reducing or eliminating unnecessary complexity and by rethinking the need for statutory hurdles required of its employees as conditions to receiving authorized benefits.

Regrettably, the one institution least able to help is this court. We have no authority to grant Mr. Carpisassi a waiver of the statutory requirement for spousal consent, see *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), even though it seems anamolous to require it when the option he elected actually increased the benefits that a surviving spouse—were there to be one— would receive. Nor does this case seem to implicate Constitutional rights and permit our review on that basis.

Our standard of review for MSPB determinations does not give us freedom to overturn the Board's determination that a waiver of the filing deadline is not warranted in these circumstances. We must affirm a decision of the MSPB unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Here, the Board, citing *Speker v. Office of Personnel Management*, 45 M.S.P.R. 380, 385 (1990), *aff'd*, 928 F.2d 410 (Fed.Cir.1991) (Table), found that waiver of the filing deadline was not available because (1) the regulation did not provide for waiver of the filing deadline; (2) Mr. Carpisassi did not assert that OPM had affirmatively misled him with respect to the deadline, but only that it had not responded to his requests for extension; and (3) OPM had properly notified Mr. Carpisassi of his election rights and the filing deadline.

The record does not support a challenge to the Board's first two findings; with respect to the third, OPM appears to have misinformed Mr. Carpisassi as to the applicable deadline. Regulations require election of an alternative annuity and spousal consent to be filed on or before the date of final adjudication. 5 C.F.R. §§ 831.2203(c)-(e)(2) (1994). The date of final adjudication is defined as 30 days after the date of the first regular monthly annuity payment. 5 C.F.R. § 831.2202 (1994). According to OPM, Mr. Carpisassi's date of final adjudication—and thus the applicable filing deadline—was November 1, 1991. Yet OPM's June 7, 1991 letter informing Mr. Carpisassi as to the alternative annuity option indicated that he must make his election by July 7, 1991.

Be that as it may, the record indicates that Mr. Carpisassi did not cease his efforts to obtain his wife's consent once the July 7 date had passed, in reliance on that date, but instead continued his attempts through the actual November 1, 1991 deadline (and beyond, including during the Board proceedings). The misinformation under the circumstances was thus harmless error. He simply was unable to obtain a timely consent from his wife. Therefore while we deplore OPM's failure to respond to Mr. Carpisassi's requests for extension, and we consider that the matter reflects an unnecessarily rigid treatment of an employee, we find no grounds upon which we can disturb the Board's ruling. Accordingly, the decision of the Board must be

**AFFIRMED.**

### COSTS

Each party to bear its own costs.